**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| GCG TRUCKING & LOGISTICS LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No.: _____ |
| THE UNITED STATES OF AMERICA, | § § § | |
| Defendant. | § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT

Plaintiff, GCG Trucking & Logistics LLC d/b/a Primos Dollar & Grocery Store hereby files this Original Complaint against Defendant, The United States of America, and respectfully shows this Court the following:

**THE PARTIES**

1.      Plaintiff GCG Trucking & Logistics LLC is a Texas limited liability company. Plaintiff GCG Trucking & Logistics LLC may be reached for all purposes in this lawsuit through the undersigned counsel of record.

2.      Plaintiff GCG Trucking & Logistics LLC owns and operates Primos Dollar and Grocery Store, a convenience store located at 1000 Bissonnet Street, Houston, Harris County, Texas 77036.

3.      Primos Dollar and Grocery Store is a "retail food store" as such term in defined by FNS in its SNAP regulations at 7 C.F.R. § 271.2.

4.      Defendant United States of America is the federal government.

5.      FNS is an agency of the United States Department of Agriculture ("USDA").  USDA is an executive branch department of the federal government.

1

6.     FNS administers and has promulgated regulations governing the SNAP pursuant to powers delegated by Congress in Section 4 of the Food and Nutrition Act of 2008. 7 U.S.C. §2013.

7.     Formerly known as the food stamp program, SNAP provides supplemental nutrition benefits to approximately 40 million Americans and more than 3.2 million residents of Texas.  SNAP's fundamental purpose is to provide eligible low-income households with increased food purchasing power. 7 U.S.C. § 2011.

8.     Pursuant to SNAP regulations set forth in 7 C.F.R. Part 278, FNS has authority to authorize and disqualify retail food stores from participation in SNAP

## VENUE AND JURISDICTION

9.     This Court has jurisdiction over this action pursuant to 7 U.S.C. § 2023, 7 C.F.R. § 279.7, and 28 U.S.C. §§ 1331, 1346.

10.    Venue in this district is proper under 7 U.S.C. § 2023 and 28 U.S.C. §§ 1391(b) and (e) because the retail food store that is the subject of this action is located in this judicial district and because the United States of America is deemed a resident of this judicial district and has consented to suit in this judicial district.

11.    Plaintiff has exhausted any and all administrative remedies required prior to the institution of this action.

12.    Congress waived Defendant United States of America's sovereign immunity pursuant to 7 U.S.C. §2023.

## INTRODUCTION

13.    This lawsuit seeks judicial review of the Final Agency Decision, dated March 9, 2026, issued by FNS affirming the permanent disqualification of Plaintiff's retail food store, Primos Dollar and Grocery Store ("Primos" or "Store") from the Supplemental Nutrition Assistance Program

("SNAP"). FNS's Final Agency Decision was sent, via e-mail, to Plaintiff's former counsel on March 10, 2026. As discussed with particularity below, Plaintiff challenges FNS's determination that Plaintiff's Store engaged in trafficking in SNAP benefits on a *de novo* basis and challenge the permanent disqualification of Primos Dollar & Grocery Store from the SNAP program. Plaintiff asks this Court to enter orders reversing, modifying, and/or declaring unenforceable the Final Agency Decision, and awarding Plaintiff reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, with the Court to enter such other orders as equitable or just.

**BACKGROUND FACTS**

14.     Between December 20, 2022, and September 17, 2025, Primos was a SNAP-authorized retailer.

15.     On July 25, 2025, FNS Section Chief Linda Petersen sent a letter to the Plaintiff charging Primos with "trafficking as defined in Section 271.2 of the SNAP regulations." ("Charge Letter")

16.     The FNS alleged that between December 2 and 19, 2023, an undercover USDA investigator made four visits to the Store.  On the first reported interaction listed in the Charge Letter, FNS's undercover investigator asserted that on December 2, 2023, a clerk said to be male, 35-40 years old, 5'5"- 5'8" tall with black hair ("Clerk 1") sold one SNAP-ineligible item in exchange for SNAP benefits.

17.     On the second reported interaction, on December 7, 2023, FNS's undercover investigator asserted that a clerk with the same description as Clerk 1 accepted SNAP benefits in exchange for one eligible and one ineligible food item (plastic bowls).  The undercover investigator also asserted that the Store exchanged $20.00 in cash for SNAP benefits.

18.    On the third reported interaction, on December 9, 2023, FNS's undercover investigator asserted that a clerk with the same description as Clerk 1 accepted SNAP benefits in exchange for one eligible food item and exchanged $20.00 in cash for SNAP benefits.

19.    On the fourth reported interaction, on December 19, 2023, FNS's undercover investigator asserted that a clerk said to be male, 30-35 years old, 5'0 – 5'3" tall with black hair ("Clerk 2") accepted SNAP benefits in exchange for one eligible and two ineligible food items (trash bags and sandwich bags). Clerk 2 also refused to exchange SNAP benefits for cash.

20.    The Store's ownership and management were unaware of the alleged improper actions of Clerks 1 or 2, did not condone them, had policies prohibiting any such rogue activities, and did not benefit from any of the alleged improper SNAP sales if they occurred as reported by FNS's undercover investigator.

21.    Prior to the transactions listed in the attachments to the Charge Letter, Primos (1) had properly developed an effective SNAP compliance policy; (2) had a SNAP compliance policy and SNAP training program in operation at the Store prior to the alleged violations; (3) had developed and instituted an effective personnel training program; and (4) Plaintiff's ownership that was not aware of, did not approve, did not benefit from, and was not in any way involved in the alleged violations.  Based thereon, FNS should have assessed a civil money penalty ("CMP") in lieu of permanently disqualifying the Store from SNAP.

22.    Primos is located in a deeply impoverished, high crime part of Houston.

23.    The fact that the Store had effective training policies and procedures was exemplified by the fact that Clerk 2 resisted the invitations by FNS's undercover investigator to exchange cash for SNAP benefits.

24.     Plaintiff alleges and will demonstrate at trial that the Store was in compliance with all applicable SNAP regulatory requirements for training policies, training, and recordkeeping required for CMP eligibility.  Moreover, there is nothing in the administrative record or elsewhere to even suggest that the Store's ownership was aware of, approved, benefited from, or was in any way involved in the alleged conduct or approval of the alleged trafficking violations. In fact, there was no allegation whatsoever of any participation in, or knowledge of any  wrongdoing or violations of FNS's SNAP regulations by the Store's members.

25.     On or about August 1, 2025, Primos submitted its response to the Charge Letter. In that response, the Plaintiff disputed the allegations and requested a CMP in lieu of permanent disqualification for trafficking.

26.     On September 17, 2025, FNS issued its determination letter concluding that the Store engaged in trafficking in SNAP benefits and permanently disqualified it from SNAP ("Determination Letter"). In the Determination Letter, FNS, without analysis, determined "that the violations occurred at your store." In the Determination Letter, FNS also determined the Store was ineligible for a Civil Money Penalty based upon the conclusion that Primos "did not submit sufficient evidence to meet the required criteria under SNAP regulation 7 CFR 278.6(i)."

27.     The Plaintiff timely sought administrative review of FNS's permanent disqualification on September 25, 2025. In its September 25, 2025, response, the Plaintiff submitted proof of that it was eligible for a CMP.

28. Via letter, dated March 9, 2026[1], FNS's Administrative Review Officer Elizabeth Allen issued the Final Agency Decision ("FAD"), affirming the permanent disqualification of the Store from SNAP.

29. The FAD made various unsupported and unjustified statements/conclusions in purported support of its affirmance of the permanent disqualification of the Store from SNAP.

30. In the FAD, FNS rejected all of Primos' arguments, notwithstanding the evidence submitted by the Store.

31. FNS's FAD relied upon records and other information in FNS's possession.

32. Many of the records and other information relied upon by ARO Allen in issuing the FAD were never provided to Primos or its counsel.

33. FNS's FAD was based on numerous incorrect factual and legal determinations, including (but not limited to) relating to the visits by the undercover USDA investigator, the burden of proof, and numerous credibility determinations.

34. At no time did any FNS Program Specialist, including Sandy Galluzzo, the program specialist who issued the Charge Letter, ever visit the Store or discuss the allegations set forth in the Charge Letter with Store personnel.

35. At no time did Linda Petersen, the FNS Section Chief who signed the Initial Determination, ever visit the Store or discuss the allegations set forth in the Charge Letter with Store personnel.

36. At no time did ARO Allen, who issued the FAD, ever visit the Store or discuss the allegations set forth in the Charge Letter with Store personnel.

---

[1] The Final Agency Decision was issued on March 9, 2026, and delivered on March 10, 2026. The Final Agency Decision is misdated for March 9, 2025.

37.     The FAD was based exclusively upon a report, which was never produced to the Store, by an unidentified USDA investigator.

38.     The FAD ignored the evidence submitted by the Store in its response in support of its Request for Administrative Review.

39.     The FAD is FNS's final administrative determination that its permanent disqualification of Primos from participation as an authorized SNAP retailer was properly imposed.

40.     No Store funds were ever used during any of the transactions referenced in the Charge Letter.

41.     No one with authority to bind the Store ever interacted with the undercover USDA investigator.

42.     Any actions taken by a Store clerk, as set forth in the transactions referenced in Charge Letter, were outside of the scope of their employment with Primos.

43.     Any actions taken by a Store clerk, as set forth in the transactions referenced in Charge Letter, were not authorized by Primos.

44.     Any actions taken by a Store clerk, as set forth in the transactions referenced in Charge Letter, were inconsistent with and violated Store policies.

45.     Trafficking is defined in 7 C.F.R. §271.2.

46.     The Charge Letter did not articulate which of the six sub-sections of 7 C.F.R. § 271.2 the Store was accused of violating.

47.     The penalty for trafficking is the permanent disqualification of the Store from participating in SNAP. 7 C.F.R. § 278.6(e)(1).

48.     During administrative proceedings, FNS relied upon records not provided to Primos or its counsel and issued its Final Agency Decision to permanently disqualify the Store from SNAP based on records never produced to the Plaintiff.

49. All information reviewed and relied upon by FNS during administrative proceedings will be produced as the Administrative Record or during discovery in this judicial review proceeding.

50. FNS, in the FAD, ignored well-founded explanations that Primos did not engage in trafficking.

51. Primos was not afforded the opportunity to evaluate and respond to all of the evidence in FNS's possession during administrative proceedings, including all of the evidence reviewed and/or relied upon by FNS in making its Final Agency Decision.

52. Requiring retailers to await judicial review proceedings before they are permitted to review all of the evidence in FNS's possession and relied upon by Administrative Review Officers and other FNS officials is arbitrary and capricious.

53. FNS's SNAP retailer administrative process is Kafka-esque and more similar to a Star Chamber than an equitable federal administrative process.

54. Federal administrative proceedings that concern the revocation of a license or permit issued by a federal agency must satisfy due process and other constitutional requirements.

55. FNS is not a law enforcement agency.

56. FNS investigators are not authorized by federal law to carry firearms or other weapons when conducting investigations of SNAP retailers.

57. No statute or regulation prohibits FNS from providing Primos with the entire administrative record during administrative review proceedings.

58. By failing to provide Primos with all information available to it, FNS did not provide Primos with a meaningful opportunity to respond to the allegations in the Charge Letter in a manner consistent with the Due Process clause of the U.S. Constitution.

59.     By failing to provide Primos with all information available to it, FNS did not provide Primos with a meaningful opportunity to participate during administrative review proceedings in a manner consistent with the Due Process clause of the U.S. Constitution.

## COUNT I –DE NOVO REVIEW OF FINAL AGENCY ACTION PURSUANT TO 7 U.S.C. § 2023 AND 7 C.F.R Part 279

60.     Plaintiff repeats and re-alleges paragraphs 1 through 59 as if fully set forth herein.

61.     At no time did Primos engage in trafficking in SNAP benefits.

62.     At no time did Primos exchange SNAP benefits for cash.

63.     The undercover USDA investigator was not a SNAP beneficiary.

64.     The EBT card used by the undercover USDA investigator was not a validly issued EBT card.

65.     The exchange of SNAP benefits for cash by a Store clerk is outside of the scope of his employment.

66.     The exchange of SNAP benefits for cash by a Store clerk acting outside of the scope of his employment is not trafficking in SNAP benefits.

67.     A SNAP-authorized retail food store is not responsible for all acts and omissions by store clerks.

68.     FNS did not and does not have statutory authority to permanently disqualify a SNAP-authorized retail food store based on acts and omissions by store clerks outside of the scope of their employment.

69.     FNS did not and does not have regulatory authority to permanently disqualify a SNAP-authorized retail food store based on acts and omissions by store clerks outside of the scope of their employment.

70.     The exchange of SNAP benefits for cash by a Store clerk acting outside of the scope of his employment is not trafficking in SNAP benefits.

71. The Food and Nutrition Act of 2008 does not impose strict liability upon a SNAP-authorized retail food store for all acts and omissions acts by store employees.

72. FNS's SNAP regulations do not impose strict liability upon a SNAP-authorized retail food store for all acts and omissions by store employees.

73. The Food and Nutrition Act of 2008 does not impose strict liability upon a SNAP-authorized retail food store for acts by store employees acting outside the scope of their employment.

74. FNS's SNAP regulations do not impose strict liability upon a SNAP-authorized retail food store for acts by a store employee acting outside the scope of their employment.

75. A preponderance of the evidence before ARB during administrative review proceedings established that Primos did not engage in trafficking in SNAP benefits.

76. In the FAD, FNS incorrectly determined that a preponderance of the evidence demonstrated that Primos engaged in trafficking, in violation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

77. The permanent disqualification of Primos from participating in SNAP should be reversed because FNS failed to consider all evidence submitted by the Store.

78. The permanent disqualification of Primos from participating in SNAP should be reversed because FNS waited nearly two years after the transactions took place before issuing the Charge Letter.

79. The permanent disqualification of Primos from participating in SNAP should be reversed because FNS did not interview anyone affiliated with the Store.

80. The FAD should be reversed because a permanent disqualification of Primos from participating in SNAP is unreasonable and excessive in light of the circumstances.

81.     FNS's acts and omissions during administrative proceedings were unreasonable, inequitable, in excess of the authority granted to it by Congress, and arbitrary and capricious.

82.     FNS's acts and omissions during administrative proceedings violated and were not consistent with the requirements of the Due Process clause of the U.S. Constitution.

83.     Permanent disqualification of Primos from participating in SNAP is inconsistent with Congressional intent in enacting the Food and Nutrition Act of 2008.

84.     Permanent disqualification of Primos from participating in SNAP represents agency action beyond the scope of authority granted by Congress to FNS when it delegated power to FNS to promulgate and enforce reasonable regulations in the Food and Nutrition Act of 2008.

85.     FNS's permanent disqualification of Primos from participating in SNAP represents agency action beyond the scope of authority granted by Congress to FNS when it delegated the power to promulgate and enforce reasonable regulations pursuant to the Food and Nutrition Act of 2008.

86.     FNS's permanent disqualification of Primos from participating in SNAP based on the Charge Letter is inconsistent with a disqualification for a "reasonable period of time."

87.     FNS's determination that it was without authority to consider a penalty other than permanent disqualification of Primos from participating in SNAP is invalid and erroneous.

88.     The Determination Letter and the FAD were based on an arbitrary and capricious interpretation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

89.     In the FAD, FNS acted arbitrarily and capriciously in concluding that Primos engaged in trafficking in violation of the Food and Nutrition Act of 2008 and FNS's SNAP regulations.

90.     FNS's permanent disqualification of Primos is premised upon an erroneous, unsupportable, and arbitrary and capricious interpretation of 7 C.F.R. § 278.6.

91.     In issuing the FAD, FNS acted arbitrarily and capriciously by failing to consider all information submitted by or related to Primos and its SNAP authorization.

92.     Pursuant to 7 U.S.C. § 2023 and 7 C.F.R. Part 279, this Court should conduct a *de novo* review of FNS's FAD which permanently disqualified Primos from participating in the SNAP.

WHEREFORE, Plaintiff respectfully requests that this Court, after conducting a *de novo* review of the FAD, enter judgment in its favor and against the United States, and issue an Order granting the following relief:

(1) Reversing the FAD;

(2) Rescinding the Determination Letter;

(3) Preliminarily and permanently enjoining FNS from denying Primos' authorization to participate in SNAP based upon the Determination Letter, the FAD, or the alleged violations in the Charge Letter;

(4) Directing FNS to immediately restore Primos's SNAP authorization and without requiring it to submit additional information or a new application;

(5) Awarding Plaintiff an amount equal to its reasonable attorneys' fees and costs; and

(6) Such other and further relief as the Court may deem just and proper.

Respectfully submitted this 7th day of April 2026.

**THE NEAL LAW GROUP, PLLC**

By: */s/  S. Loyd Neal, III*
S. Loyd Neal, III
Federal Bar No.: 9145
Texas State Bar No.: 14839390
3006 Brazos Street
Houston, Texas 77056
(713) 403-7404 *(direct)*
(713) 960-0204 *(fax)*
Lneal@NealLawGroup.com

and

**OLSSON FRANK WEEDA TERMAN MATZ PC**

By:  */s/  Stewart D. Fried\**
Stewart D. Fried, Principal
2000 Pennsylvania Avenue NW, Suite 4003
Washington, DC 20006
(202) 518-6326 (telephone)
(202) 747-3140 (facsimile)
SFried@ofwlaw.com
***Pro Hac Vice Motion Forthcoming***


**ATTORNEYS FOR PLAINTIFF**